CASE 92—PETITION EQUITY—MAY 7.

# Sparks, Adm'r, &c., v. Ball, &c.

APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

A REMAINDERMAN CAN NOT BE REQUIRED TO PAY FOR IMPROVEMENTS PUT UPON THE PROPERTY BY THE LIFE TENANT with the knowledge that he owned only a life estate; and, therefore, the heir of the life tenant can not, as against a debt due to the remainderman by the life tenant, set up as a defense the value of permanent improvements made by the life tenant while in possession.

C. B. SEYMOUR FOR APPELLANTS.

The life tenant is not entitled to compensation for improvements put upon the land with the knowledge that he had only a life estate. (Bell v. Barnett, 2 J. J. M., 516; Taylor v. Whiting, 9 Dana, 401; Barlow v. Bell, 1 A. K. M., 246; Scroggs v. Taylor, 1 A. K. M., 247; Harrison v. Fleming, 7 Mon., 538.)

HELM & BRUCE FOR APPELLEES.

The history of the growth of the law on the subject of allowing compensation for improvements made by an occupant upon land which is subsequently recovered by another party under a better title shows that the reason and the spirit of that rule applies to this case. (Parsons v. Moses, 16 Iowa, 444; note to Jackson v. Loomis, 15 Am. Dec., 349; Bell v. Barnett, 2 J. J. M., 516; Taylor v. Whiting, 9 Dana, 401.)

CHIEF JUSTICE HOLT DELIVERED THE OPINION OF THE COURT.

In the assignment of dower to Susan Sparks as the widow of Nimrod Sparks, there was allotted to her land worth eight hundred dollars more than her one-third portion. The decree, therefore, provided that for the use of so much of this excess as would otherwise have at once passed to their son, N. W. Sparks, she should pay to him a certain sum annually. Having failed to pay this annuity for several years, and having in the meantime marrried H. L. Ball, she, together

with her husband, executed to N. W. Sparks on January 1, 1865. a note for three hundred and forty-seven dollars and sixteen cents, and secured its payment by a mortgage upon a lot of ground that belonged to her absolutely, according to the face of the conveyance to her. By the terms of the mortgage it was not enforceable until after her death.

The appellee, Mattie A. Robinson, is her child by the last husband. The mother died in February, 1883. The property mortgaged to N. W. Sparks descended equally to him and his half-sister, the appellee. He now seeks to enforce his mortgage. He also asks that the mortgaged property, which constitutes substantially all the estate left by his mother, be also subjected to the payment of the annuity installments which accrued between the time of the execution of the note and her death.

The appellee claims that the mortgaged property was held by her mother in trust for her husband, H. L. Ball, during his life, with remainder to the appellee. If it be conceded that there is competent testimony to this effect, yet the arrangement was not evidenced by any writing, the deed for the property to Mrs. Ball is absolute in its terms, and there is no claim of fraud, accident, or mistake in its execution; nor does it appear that N. W. Sparks had any notice of the alleged verbal trust. It can not, therefore, affect him. She also claims that she was defrauded in the settlement of an indebtedness of her half-brother to her; that there is, in fact, a balance yet owing to her, and this she pleads as a set-off to his claims. This defense is not sustained by the evidence.

We now reach the real and remaining question in the case. It appears that the mother made permanent improvements upon the dower land after its allotment to her, which enhanced its value in a sum exceeding the annuities which she was required to pay by reason of getting more than a third of the deceased husband's realty, and that N. W. Sparks now has the property so improved. It is, therefore, claimed that as he is a complainant in a court of equity, he must do equity, and that he should not be allowed to subject the property, which has descended jointly to himself and his half-sister, to the payment of the annuity claims against his mother, when he has received property which she as the life tenant improved in value in a sum greater than his claims. Some question is made as to the sufficiency in form of the pleading setting up this defense; and it is also claimed the testimony does not show that the improvements were of a permanent character, or that they enhanced the vendible value of the dower land in a sum equal to the annuities. We shall assume, however, in considering the question, that these objections are not well taken. Indeed, this is our opinion.

The question is, therefore, presented whether the life tenant, or her heir, can, as against a debt owing to the remainderman, when asserted by him in equity, set up as a defense the value of permanent improvements made by her while in possession of the land as the life tenant. It is claimed that the equitable rule, which even in the absence of any statute was applied as between a *bona fide* occupying claimant

of land and the real owner, should be applied in a
case like this one. We do not think so, even though
hardship may occasionally result. The rule as to oc-
cupying claimants was in some cases, heretofore de-
cided by this court, carried to great length. They
were, however, all based upon the idea that the im-
provements were made by him upon the land whilst
he *bona fide* considered it his own ; and as the owner,
unless liable for compensation, would be the gainer
by the loss of the possessor, natural justice required
he should account for what he thus received in the
amelioration of the land. The maxim that no one
ought to be made rich out of another's loss was ap-
plied to its full extent. This rule should never be
carried so far, however, as to allow one compensation
for improvements, who wrongfully takes possession
of land, knowing that it belongs to another, because
equity will not aid a wrong-doer. When properly
interpreted it merely goes to the extent of holding
that "one man shall not be enriched at the expense
of another" where the latter does not appear as a
wrong-doer.

One man should not be benefited by another's money
or labor without making compensation, and one must
do what is just before he can exact equity; but this
rule should not be so far extended as to unjustly in-
flict an injury upon a party when he has no agency
in the transaction. If the rule were adopted that a
life tenant, who knows he is not the absolute owner
of the property, and that his interest in it is liable
to terminate at any time, could improve it *ad libitum*,
and charge the remainderman with it, injustice would

often result. This is not a case where land has been lost by a *bona fide* claimant; the claim is not for compensation for improvements as against a claim for rents for the property improved, but it is sought to extinguish a debt secured by mortgage not upon the improved property, and other indebtedness not secured at all, which the life tenant owed, by a claim for improvements made by the debtor upon property which she held for life only. It does not appear that they were made by the request of the remainderman. The life tenant made them at her pleasure, knowing that her interest in the property must end at her death. It should be presumed that she made them for her own convenience, and with a willingness to risk whether she would live to enjoy them long enough to recompense her for their cost. If she could charge the remainderman with them, then she, at her pleasure, could improve him out of his estate.

The improvements may be of a character not desired by him; they may be so inferior in quality as to render others necessary in using the property according to his desire, or they may be of so great a value that he may not be able to make the additional ones, and thus he may be forced to sell his property or virtually be deprived of it. The tenant for life is not bound to accept the estate if he can not render it profitable save at the expense of the remainderman, and if allowed to do this, then the latter is at his mercy.

It would, in our opinion, be an unwarrantable extension of the equitable rule to which we have alluded to apply it to cases of improvements made by a life tenant without the request of a remainderman, result-

ing, in a majority of cases, in wrong and injustice. The life tenant knows he is not the owner of the property; that the remainder party may acquire it at any time by reason of death, and that he is taking the risk in making any improvements upon it. In doing so he must take the risk of being recompensed by their use. The seeming hardship to the appellee may create sympathy; but it or the relation of the parties can not be allowed to alter the law of the case.

The judgment is reversed, with directions to subject the mortgage property, first, to the payment of the mortgage; and as it appears Mrs. Ball was not otherwise indebted, then to the other annuity debts of both N. W. Sparks and the appellee as may be equitable, and for all further proper proceedings.