HENRY W. WAGNER, Executor of Anna Maria Ruhl, Deceased,

*vs.*

CONRAD RUHL, JR., HENRY RUHL, HENRY W. WAGNER, Trustee, and HENRY W. WAGNER.

*Life tenants: improvements; can not charge remaindermen.*

In general, a life tenant can not charge the remaindermen with the cost of permanent improvements.            p. 523

*Decided January 15th, 1919.*

Appeal from the Circuit Court of Baltimore City. (Soper, C. J.)

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe, Thomas, Pattison, Urner, Stockbridge and Constable, JJ.

*Wm. H. Surratt,* for the appellant.

*Charles F. Stein,* for the appellees.

Urner, J., delivered the opinion of the Court.

A tract of land containing one hundred and seven acres, situated at the intersection of Eastern Avenue Road and Back River, in Baltimore County, was devised by Conrad Ruhl, Sr., to his wife, Anna Maria Ruhl, for life and to his children, Conrad, Henry and Mary Ruhl, in remainder. At

the time of the testator's death, which occurred in 1901, the
improvements on the land were of small value and utility
and the annual revenue it produced did not exceed two hun-
dred dollars.    By reason of its location the property was
available for leasing in small parcels, fronting on the river
and the roadway, to persons who were willing to improve
the lots at their own expense, in consideration of their tenure
being free of rent for a certain period, and with the under-
standing that the buildings and other improvements erected
by the lessees should become a part of the freehold.    For a
period of about four years after the death of the testator the
property was managed by his two sons for the benefit of their
mother as life tenant and of their sister and themselves as
remaindermen.    During that period they leased portions of
the land to various tenants upon such terms and conditions
as we have indicated.    In the latter part of the year 1903
the life tenant executed a deed of trust to the appellant, her
grandson, under which he assumed the management of the
property, and remained in charge of it until the death of
the life tenant in 1916.    While the appellant was in control
of the property as trustee, he continued the policy of leasing
river, shore and road front lots upon terms similar to those
already stated.    He also expended large sums of money in
practically reconstructing the old farm buildings which were
on the land at the time of the testator's death, and made other
permanent improvements.    As a result of this policy of leas-
ing and development the annual income from the land in-
creased from $200 at the beginning of the life estate to about
$3,600 at the time it expired.    The improvements to the
property during that interval were of the approximate value
of $18,000.00.    All were made with the knowledge and con-
sent of the remainderman, and were insured for their benefit,
and that of the life tenant, according to their respective
interests.

The life tenant left a will of which the appellant is exec-
utor.    In that capacity he has filed a bill in equity for the

purpose of charging the remaindermen with the cost of the permanent improvements, made during the existence of the preceding life estate, upon the land which they now own absolutely. From the allegations of the bill we have obtained the facts to which we have referred. A demurrer to the bill was sustained, with leave to amend, and for the review of that action the case has been brought to this court on appeal.

The circumstances of the case as disclosed by the bill of complaint, are thoroughly appropriate for the application of the general rule that the remainderman is not chargeable for permanent improvements which the life tenant places upon the land. This rule was applied and discussed in the case of *Weber* v. *Lauman,* 91 Md. 90, where a fund raised on a mortgage of both life tenant and remainderman was applied to the permanent improvement of the property. The opinion delivered by Judge Boyd in that case, after distinguishing the case of *Gambril* v. *Gambril,* 3 Md. Ch. 259, then and now also relied upon, proceeded to say: "But ordinarily a life tenant has no power to make permanent improvements on the property at the expense of the estate in remainder, for if he could he might by his improvements sacrifice all the interest of the remainderman, and make a character of improvements that would not meet with his approval. The general rule, therefore, is that he cannot charge the estate of the remainderman with the costs of permanent improvements he puts on it, *Thurston* v. *Dickerson,* 2 Rich. Eq. 317 (S. C. 46 Am. Dec. 56); *Sparks* v. *Ball,* 91 Ky. 502 (S. C. 34 Am. St. Rep. 236); 13 *Ency. of Law,* 216; 1 *Leading Case on Real Property (Sharswood and Budd),* 207. As was said in *Sparks* v. *Ball,* "if she could charge the remainderman with them, then she, at her pleasure, could improve him out of his estate.' " In the opinion just quoted from it was said that there might, of course, be circumstances under which the remainderman would be chargeable for such improvements, "if, for example, he permitted improvements to be made with the understanding, either express or such as a

Court can properly imply, that he would pay for them, or if they be made for the immediate benefit of the remainderman, who is not legally capable of entering into an agreement, as in *Gambril* v. *Gambril, supra.*"

It is not claimed in this case that the improvements were made for the immediate use of the remaindermen, or that they agreed either expressly or by implication, to pay any part of the cost thereby incurred. Most of the improvements appear to have been made by lessees of small parcels of the land at their own expense. While the payment of rent for the lots improved by lessees was temporarily deferred by agreement in consideration of such expenditures, the life tenant was in that way enabled to derive large revenues from property which had previously produced only a small amount of income. For a long period of years she enjoyed the benefits of the greatly increased rentals thus resulting from improvements, to the cost of which she made no contribution. Apart from the effect of the general rule to which we have referred, there is ample reason upon the special facts of the case to deny the right of the personal representative of the life tenant to recover from the remaindermen the costs of improvements, for which the life tenant herself made no payments and assumed no liability. With respect to the improvements alleged to have been made at the life tenant's own expense, there is nothing in the averments of the bill to exempt the claim from the operation of the general rule we have stated as applicable to such cases.

*Order affirmed, with costs.*